1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

9

### EASTERN DISTRICT OF CALIFORNIA

10

11

12

13

14

15

16

17

18

| | |
|---|---|
| FRANCES J. GARCIA,<br><br>               Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>               Defendant. | Case No.  1:22-cv-01473-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 13, 15, 16) |

19

**I.**

20

**INTRODUCTION**

21

Plaintiff Frances J. Garcia ("Plaintiff") seeks judicial review of a final decision of the

22

Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

23

Social Security benefits pursuant to Title XVI of the Social Security Act.  Defendant filed a cross-

24

motion for summary judgment and opposition to Plaintiff's brief.  The matter is currently before

25

the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge

26

Stanley A. Boone.[1]  For the reasons set forth below, Plaintiff's appeal shall be denied and

27

28

---

[1]  The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (ECF Nos. 8, 10, 11.)

1  Defendant's cross-motion shall be granted.

2  ## II.

3  ## BACKGROUND[2]

4        On December 26, 2017, Plaintiff filed an application for Supplemental Security Income

5  ("SSI") under Title XVI,[3] alleging disability beginning December 26, 2017.[4]  (Admin. Rec.

6  ("AR") 194–202, ECF Nos. 12-1, 12-2.)  Plaintiff alleges disability based on depression, anxiety,

7  and learning disability.  (See AR 39 (hearing testimony), 214 (disability application); but see AR

8  47–48 (testimony that Plaintiff gets anxiety and frustration when she doesn't understand

9  something but not depression).)

10        Plaintiff's claim was initially denied on March 30, 2018, and denied upon reconsideration

11  on June 5, 2018.  (AR 68–80, 81–93.)  On August 7, 2020, Plaintiff, represented by counsel,[5]

12  appeared via telephonic conference for an administrative hearing before the Administrative Law

13  Judge E. Alis (the "ALJ").  (AR 34–57.)  Vocational expert ("VE") Antonio R. Reyes also

14  testified at the hearing.  "Due to the paucity of objective evidence in this case, [the ALJ] obtained

---

[2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the parties' briefings by their ECF pagination.

[3] While Plaintiff's complete medical history (*i.e.*, records of a claimant's medical sources covering at least the 12 months preceding the month in which an application is filed) must be considered for purposes of his application, 20 C.F.R. § 416.912, the Court notes that SSI benefits are not payable prior to the month following the month in which the application was filed, 20 C.F.R. § 416.335, and therefore the ALJ's disability determination is whether Plaintiff was under a disability as of the date the application was filed.

[4] The Court notes Plaintiff also appears to have filed a disability application on or around August 6, 2015.  (See AR 58–67.)  In that case, Plaintiff alleged disability based on learning disorder, beginning June 29, 1993.  (AR 58.)  At the initial level, the prior administrative medical findings indicated Plaintiff was not significantly limited in the ability to remember locations and work-like procedures; to remember and carry out very short and simple instructions; to perform activities within a schedule, maintain regular attendance, and be punctual; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (AR 63–64.)  She was deemed moderately limited in the ability to understand, remember, and carry out detailed instructions; and maintain attention and concentration for extended periods.  And she was deemed to have no limitations with respect to social interactions and adaptation.  (AR 64.)  This resulted in a finding of nondisability on October 13, 2015.  (AR 65–67.)  The record does not indicate that Plaintiff sought reconsideration of this decision; thus, the decision became final.

[5] Plaintiff was represented during the administrative proceedings by Melissa Proudian and Amanda Foss, Attorneys at Law.  (See AR 19.)  Plaintiff is currently represented by attorney Melissa Newel, of Newel Law in the instant matter.  (ECF No. 13.)

a post-hearing psychological consultative examination, which was proffered to [Plaintiff] with no objection." (AR 19 (citing AR 286–88, 325–36 (Exs. 13E and 5F)).) On August 4, 2021, the ALJ issued a decision denying benefits. (AR 16–33.) On September 7, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (AR 5–10.)

Plaintiff initiated this action in federal court on November 14, 2022, and seeks judicial review of the denial of her application for benefits. (ECF No. 1.) The Commissioner lodged the administrative record on February 14, 2023. (ECF No. 12.) On March 31, 2023, Plaintiff filed a motion for summary judgment appealing the Commissioner's decision. (ECF No. 13.) On May 5, 2023, Defendant filed a cross-motion for summary judgment and brief in opposition to Plaintiff's brief. (ECF No. 15.) Plaintiff filed a reply on May 22, 2023, and the matter is deemed submitted on the pleadings.

**III.**

**LEGAL STANDARD**

**A.    The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[6] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[7] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful

---

[6] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

[7] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only SSI benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes the cases and regulations cited herein are applicable to the instant matter.

3

activity?  If so, the claimant is not disabled.  If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).   The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[8]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for determining RFC).  "[I]t is the responsibility of the ALJ, not the

---

[8] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or call a VE. See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' " Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

### B.    Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the

ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. Stout, 454 F.3d at 1055–56. Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

## THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

The ALJ conducted the five-step disability analysis and made the following findings of fact and conclusions of law as of the date of the decision, August 4, 2021 (AR 21–29):

At step one, the ALJ determined Plaintiff has not engaged in substantial gainful activity since December 26, 2017, the application date. (AR 21 (citing 20 C.F.R. §§ 416.971 et seq.).)

At step two, the ALJ determined Plaintiff has the following severe impairments: intellectual disorder, major depressive disorder with anxious distress, and language disorder. (AR 22 (citing 20 C.F.R. § 416.920(c)).)

At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Id. (citing 20 C.F.R. §§ 416.920(d); 416.925; 416.926).)

In reaching this decision, the ALJ considered Plaintiff's severe physical impairments under the listings, specifically Listings 12.04 (depressive, bipolar and related disorders), 12.05

(intellectual disorders), and 12.11 (neurodevelopmental disorders).  More specifically, the ALJ determined Plaintiff does not satisfy the paragraph B criteria because her limitations in the four broad functional areas are all of mild and moderate severity.[9]  (AR 22–23.)  The ALJ also considered the paragraph C criteria and determined the record does not establish the presence of paragraph C criteria.  (AR 23–24.)

Before proceeding to step four, the ALJ determined Plaintiff has the RFC to perform:

> **a full range of work at all exertional levels but with the following nonexertional limitations: she would be limited to simple and routine tasks; and she would be limited to non-production rate work (no jobs that have high production quotas that need to be done within strict time deadlines like what you might expect on an assembly line); she would need a job that has little to no independent decision-making in terms of how the job tasks are performed; no goal-setting required in the job; she can only do jobs where the job functions are taught by demonstration as opposed to having to independently learn the job tasks through reading manuals; she would be limited to occasional superficial interactions with the public such as greeting customers, exchanging pleasantries; and she would need to work in a low-stress environment with few changes in the day-to-day work setting or tools and work processes used to accomplish the work.**

(AR 25–27 (citing 20 C.F.R. § 416.929; SSR 16-3p, <u>available at</u> 2017 WL 5180304 (Oct. 25, 2017)) (emphasis in original).)

At step four, the ALJ found Plaintiff has no past relevant work because Plaintiff "has never worked."  (AR 27–28 (citing 20 C.F.R. § 416.965).)

At step five, the ALJ noted Plaintiff was born on June 29, 1993, and was 24 years old (which is defined as a younger individual age 18–49) on the date the application was filed;

---

[9] The "paragraph B criteria" evaluates mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme."  <u>Id.</u>  To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning.  <u>Id.</u>  An "extreme" limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  <u>Id.</u>  A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.  <u>Id.</u>  A "moderate" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "fair."  <u>Id.</u>  And a "mild" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "slightly limited."  <u>Id.</u>

Plaintiff has at least a high school education; and transferability of job skills is not an issue in this case because Plaintiff does not have any past relevant work.  (AR 28 (citing 20 C.F.R. §§ 416.963; 416.964; 416.968).)  Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (20 C.F.R. §§ 416.969; 416.969(a)), such as:

- Laundry worker (Dictionary of Occupational Titles ("DOT") 361.684-014), a medium-exertional work position with a specific vocational preparation ("SVP") level of 2, and approximately 70,000 jobs in the national economy;

- Hand packager (DOT 920.587-018), a medium-exertional work position with an SVP of 2, and approximately 40,000 jobs in the national economy; and

- Garment sorter (DOT 222.687-014), a medium-exertional work position with an SVP of 2, and approximately 25,000 jobs in the national economy.

(AR 28.)  With respect to the identified jobs, the ALJ noted the VE's testimony was consistent with the DOT, but as to all aspects of employment activities or duties—such as goal setting, teaching through demonstration versus reading and exposure to the public—that were not covered by the DOT, the ALJ relied on the VE's testimony based on his professional experience and education.  (AR 28–29, 53.)

Therefore, the ALJ found Plaintiff has not been under a disability, as defined in the Social Security Act, since December 26, 2017, the date the application was filed.  (AR 29 (citing 20 C.F.R. § 416.920(g)).)

**V.**

**DISCUSSION**

On appeal, Plaintiff raises two challenges to the ALJ's decision: (1) whether the ALJ "failed to apply the correct legal standard to the evaluation of medical opinion;" and (2) whether the ALJ erred in failing to resolve an apparent conflict between what the ALJ determined Plaintiff could do and the requirements of the jobs that the VE opined Plaintiff could perform.[10]  (ECF No.

---

[10] As an additional note, the Court is cognizant that, in raising only the two aforementioned issues, Plaintiff has waived argument with respect to any other matter.  Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) (stating court "will not consider any claims that were not actually argued in

13 at 2, 15–21.)

## A.      Whether the ALJ Properly Evaluated the Medical Opinion Evidence

Plaintiff argues the ALJ erred in the evaluation of Dr. Popper's opinion by failing to address the supportability factor.  (ECF No. 13 at 16–18.)

### 1.      Legal Standard

Where, as here, a claim is filed after March 27, 2017, the revised Social Security Administration regulations apply to the ALJ's consideration of the medical evidence.  See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions), 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Under the updated regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."  20 C.F.R. §§ 404.1520c(a); 416.920c(a).  Thus, the new regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions, and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources.  See 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).  As recently acknowledged by the Ninth Circuit, this means the 2017 revised Social Security regulations abrogate prior precedents requiring an ALJ to provide "specific and legitimate reasons supported by substantial evidence in the record" for rejecting the opinion of a treating physician.  Woods v. Kijakazi, 32 F.4th 785, 788–92 (9th Cir. 2022).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior

---

appellant's opening brief" and will only "review … issues which are argued specifically and distinctly in a party's opening brief.").  Particularly of note here, Plaintiff has not challenged the ALJ's step two and three determinations identifying her severe impairments; she does not challenge the ALJ's evaluation of the objective medical record or the medical opinion evidence beyond the ALJ's evaluation of Dr. Popper's opinion, or the weight the ALJ accorded to Plaintiff's testimony and the lay witness statement from her mother; and Plaintiff does not challenge the ALJ's RFC determination with respect to her capacity for a full range of work with only non-exertional limits, or the specific functional limitations identified in the RFC.  The practical effect of Plaintiff's waiver is a concession that, apart from the evaluation of Dr. Popper's medical notes and opinion, the ALJ properly considered all other medical and non-medical evidence of record in formulating the RFC.

administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c)(1)–(5). The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), (b)(2). Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions … will be." 20 C.F.R. § 404.1520c(c)(1). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. § 404.1520c(c)(2).

Accordingly, the ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [he] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. §§ 404.1520c(b)(2)–(3). Further, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). Nonetheless, even under the new regulatory framework, the Court still must determine whether the ALJ adequately explained how he considered the supportability and consistency factors relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence. See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

2.    The ALJ's Evaluation of Dr. Popper's Opinion

The ALJ reviewed Dr. Popper's opinion and evaluated it as follows:

> Although the claimant has not had significant treatment during the relevant period in this case, Mark Popper, Ph.D., provided a treatment summary indicating diagnoses of major depressive disorder with anxious distress and language disorder. He noted the claimant attended weekly therapy from September 2017 to January

2018, when she discontinued due to insurance problems. He noted he observed "difficulties relaying and receiving information," and that the claimant "lacks the ability to fully understand and comply with social rules and standards of public behavior." Dr. Popper provided TONI-4 results indicating the claimant's intellectual age equivalent is that of an 11-year old, which is generally consistent with Dr. Pasek's WAIS-IV results (2F/1-3). Dr. Popper later provided his treatment notes, where he indicated, the claimant "cannot work and cannot be independent and became very upset when this was exposed," and that she, "continually shows major deficits in IQ and adaptive functioning and ability to communicate." He also noted the claimant has, "very limited social/emotional intelligence and is somewhat rigid in her conceptualization and coping skills when it comes to friendship or romantic relationships," (4F/3-4). The undersigned finds Dr. Popper's conclusory statements regarding the claimant's inability to work or maintain age-appropriate social functioning unpersuasive because they are unsupported by Dr. Pasek's observations that the claimant presented in an appropriate manner and exhibited no limitations when completing the Trails Making Test (TMT).

…

Dr. Popper's treatment summary indicates the claimant's diagnoses of major depressive disorder with anxious distress, and language disorder, but his treatment notes and TONI-4 results focus primarily upon the claimant's frustrations as they relate to her cognitive limitations. The absence of any psychiatric medication management is inconsistent with significant depression or anxiety (2F/1-3 and 4F/2-14).

…

I find Dr. Popper's conclusory opinions that the claimant would be unable to work overly restrictive because they are unsupported by Dr. Pasek's observations that the claimant was socially appropriate and demonstrated adequate concentration as measured by the Trails Making Test (TMT) (2F).

(AR 23, 27.)

Based on this analysis, the ALJ concluded Plaintiff's treatment records show she can perform simple work. (Id.)

3.   Analysis

Plaintiff argues the ALJ only considered Dr. Popper's opinions in relation to Dr. Pasek's observations, which goes to the consistency factor but not the supportability factor. (ECF No. 13 at 16–18.) As to the supportability factor, Plaintiff argues the ALJ failed to provide adequate reasons for discounting Dr. Popper's opinion under the supportability factor supported by

substantial evidence.[11]   (Id.)  However, the Court finds the ALJ adequately explained how he considered the supportability factor relative to Dr. Popper's opinion, and the ALJ's reasons for discounting Dr. Popper's opinion were supported by substantial evidence in the record.  Ford, 950 F.3d at 1154; Martinez V., 2021 WL 1947238, at *3.

Indeed,  though not explicitly  spelled  out  in  the  final  short  paragraph rejecting  Dr. Popper's opinion (AR 27), the Court understands that the ALJ weighted the cumulative medical evidence more greatly than Dr. Popper's as to certain functional determinations, as evidenced by the extensive analysis provided in the other pages of the ALJ's decision.  (See AR 25–27); Rice v. Barnhart, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("Because it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five, we consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five.") (internal citation omitted); see also Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012), superseded by regulation on other grounds ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned."); Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) (a reviewing court is "not deprived of [its] faculties for drawing specific and legitimate  inferences  from  the  ALJ's  opinion,"  provided  "those  inferences  are  there  to  be drawn.").  Further, the Ninth Circuit does not require an ALJ to "draft dissertations when denying benefits."  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020); see also Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (citing SSR 96-8p) ("[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary.").

Here, as to the supportability factor, the ALJ noted Dr. Popper's opinion was "conclusory," meaning that it was not supported by his own medical records.  (See AR 23, 27.) This is a legally permissible reason to discount a treating physician's opinion.  See Bray v.

---

[11] Notably, Plaintiff does not challenge the ALJ's summary and characterization of the longitudinal medical record or the ALJ's evaluation of the other medical opinions, nor does Plaintiff appear to dispute the ALJ's evaluation of Dr. Popper's opinion under the consistency factor.  Nor does Plaintiff challenge the ALJ's evaluation of the other evidence of record that was synthesized and weighed in support of reaching the RFC determination.  Any challenges not raised are thus waived.  Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash., 350 F.3d at 929).

Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ may reject a medical opinion that does not contain any explanation of the basis of its conclusions).   The ALJ notes on multiple occasions that Plaintiff did not submit sufficient treatment records to support her allegations of disability, including those reported by Dr. Popper. Indeed, the ALJ ordered a post-hearing psychological consultative examination "[d]ue to the paucity of objective evidence in this case," so that the ALJ would have further medical records to evaluate Plaintiff's alleged symptoms.   (AR 19.)   In another example, the ALJ notes that Dr. Popper's treatment summary indicates Plaintiff's diagnoses of major depressive disorder with anxious distress and language disorder, "but his treatment notes and the TONI-4 results focus primarily upon [Plaintiff's] frustrations as they relate to her cognitive limitations" as opposed to these diagnoses; moreover, the ALJ notes an absence of any psychiatric medication management in the medical records, or other evidence in the medical records to support the diagnoses.   (See AR 27.)

The ALJ also pointedly notes Plaintiff treated with Dr. Popper weekly from September 2017 to January 2018, "approximately two weeks after her [SSI] application date" (id.), at which time she discontinued treatment "due to insurance problems."[12]   (AR 23.)   The ALJ's pointed comment not only suggests that the ALJ viewed the timing in which Plaintiff sought treatment critically, see Molina, 674 F.3d at 1114 (claimant's "failure to assert a good reason for not seeking treatment," as well as asserting a reason that the ALJ determines is not believable, can cast doubt on the sincerity of the claimant's pain testimony, as can a failure to seek psychiatric treatment until after the claimant applies for disability benefits); see also Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment … can cast doubt on the sincerity of the claimant's

---

[12] With respect to Plaintiff's claims that she had to stop attending sessions with Dr. Popper for medical insurance reasons, the Court notes Dr. Popper directed Plaintiff to apply for Medi-Cal (see AR 312); however, the record does not reflect that Plaintiff attempted to receive Medi-Cal benefits in order to continue her treatment after submitting her SSI application for benefits.

[subjective symptom] testimony."), but also supports the ALJ's conclusion that Plaintiff's treatment records are insufficient to support her claims.

Moreover, Plaintiff's lack of treatment was one of several other considerations the ALJ identified for rejecting Plaintiff's allegations of totally debilitating symptoms and reaching an adverse credibility determination (see AR 26–27).[13]  A review of Dr. Popper's opinion and treatment records reveals the ALJ not only rejected Dr. Popper's opinion because it relied heavily upon Plaintiff's reports, but also because the opinion was internally inconsistent as well as inconsistent with the other medical evidence, as discussed.  See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) ("A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted.").

The ALJ's finding that Dr. Popper's opinion was conclusory, combined with examples of how his conclusions were not supported by his own treatment notes or the medical record constitutes a sufficient explanation of the ALJ's consideration of the supportability factor and the ALJ's discounting of Dr. Popper's opinion (AR 27).  Martinez V., 2021 WL 1947238, at *3.  The medical records, including Dr. Popper's treatment notes, identified by the ALJ in support of these findings constitute substantial evidence.  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008); Ford, 950 F.3d at 1155; Andrews, 53 F.3d at 1041; Batson, 359 F.3d at 1195.  Plaintiff's argument is, therefore, unavailing.

In addition, though Plaintiff does not appear to challenge the ALJ's decision on this point, the Court notes the ALJ adequately discussed the consistency factor, and determined "Dr. Popper's conclusory opinions that [Plaintiff] would be unable to work [are] overly restrictive because they are unsupported by Dr. Pasek's observations that [Plaintiff] was socially appropriate and demonstrated adequate concentration ...."  (AR 27.)  The ALJ also noted Dr. Popper's opinion was inconsistent with the State agency psychological consultants' opinions that Plaintiff is capable of simple, repetitive work with limited public contact (and the records cited therein).

---

[13]  Again, Plaintiff does not challenge the ALJ's rejection of her symptom testimony, based on the finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record.

(Id. (citing AR 68–79, 81–92).)   At bottom, the ALJ rejected Dr. Popper's opinion as overly restrictive, yet did not discount it entirely; to the contrary, the ALJ concluded that Plaintiff has moderate limitations in the cognitive functional areas of "understanding, remembering and applying information" and "interacting with others," as well as mild limitations in the functional areas of "adapting or managing oneself" and "concentrating, persisting or maintaining pace," and reached an RFC determination that included limitations to simple and routine tasks, non-production rate work, no independent decision-making or goal-setting, only occasional superficial interactions with others, a low-stress environment, and job functions that can be taught by demonstration.  (AR 22–23, 25.)

On this record, the Court finds the ALJ reasonably interpreted the objective medical evidence and substantial evidence supports the ALJ's relevant findings.  As previously noted, this Court must defer to the decision of the ALJ where evidence exists to support more than one rational interpretation.  Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir. 1992); see also Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999) (When the evidence presented could support either affirming or reversing the Commissioner's conclusions, the court cannot substitute its own judgment for that of the Commissioner).   "As [the Court] cannot say that the ALJ's interpretation of the available evidence was not rational, the ALJ's conclusions were supported by substantial evidence."  Shaibi v. Berryhill, 883 F.3d 1102, 1108 (9th Cir. 2017).  Accordingly, the Court concludes the ALJ's analysis of the supportability and consistency factors relative to Dr. Popper's medical opinion was appropriately considered and is based on substantial evidence from the record.  See Woods, 32 F.4th at 792; Martinez V., 2021 WL 1947238, at *3; see also Ford, 950 F.3d at 1155; Tommasetti, 533 F.3d at 1041; Bayliss, 427 F.3d at 1216; Batson, 359 F.3d at 1195; Bray, 554 F.3d at 1228.

**B.     Whether the ALJ Resolved Apparent Conflicts Between the VE's Testimony and the DOT, Pursuant to SSR 00-4p**

As previously noted, the ALJ reached an RFC determination that Plaintiff is capable of capacity for a full range of work with only mental functional restrictions.  (AR 25.)  The VE testified Plaintiff was capable of performing jobs such as laundry worker, hand packager, and

garment sorter, and the ALJ concluded Plaintiff was capable of performing such work in the disability decision.  (AR 28, 53.)  Plaintiff argues apparent inconsistencies exist between the information listed in the DOT and the ALJ's conclusion that Plaintiff could perform jobs such as laundry worker, hand packager, and garment sorter, as based on the VE's testimony, that necessitate remand.  (ECF No. 13 at 18–21.)

     1.   <u>Legal Standard</u>

As previously noted, at step five, the Commissioner must "identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [her] identified limitations." <u>Zavalin v. Colvin</u>, 778 F.3d 842, 845 (9th Cir. 2015) (citation and internal quotations omitted).  That is, the ALJ must consider potential occupations the claimant may be able to perform, based on the claimant's RFC, age, education and work experience, and the information provided by the DOT and the VE.  <u>See id.</u> at 846; <u>Valentine v. Astrue</u>, 574 F.3d 685, 689 (9th Cir. 2009);  20 C.F.R. § 416.920(g).

"The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings."  SSR 00-4p, <u>available at</u> 2000 WL 1898704 (Dec. 4, 2000).  "The term 'occupation,' as used in the DOT, refers to the collective description of those jobs.  Each occupation represents numerous jobs." <u>Id.</u>; <u>see also</u> <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1435 (9th Cir. 1995) (noting the DOT is not comprehensive, that "[i]ntroduction of evidence of the characteristics of specific jobs available in the local area through the testimony of a vocational expert is appropriate, even though the job traits may vary from the way the job title is classified in the DOT," and holding "[T]he ALJ was within his rights to rely solely on the vocational expert's testimony.") (citations omitted).  Information about a particular job's requirements may be available from a VE's experience in job placement or career counseling.  SSR 00-4p.  Thus, a VE may be able to provide more specific information about jobs or occupations than the DOT.  <u>Id.</u>; <u>see also</u> <u>Lounsburry</u>, 468 F.3d at 1114.  Accordingly, the ALJ may rely on VE testimony regarding "(1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy."  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1101 (9th Cir. 1999);

1   Lockwood v. Comm'r of Soc. Sec., 616 F.3d 1068, 1071 (9th Cir. 2010) (the ALJ can meet the

2   agency's burden of proving that other work exists in significant numbers by the testimony of a

3   VE).

4        Nonetheless, hypothetical questions posed to the VE must set out all the limitations and

5   restrictions of the particular claimant, as supported by the medical record.  Embrey v. Bowen, 849

6   F.2d 418, 422 (9th Cir. 1988).  Where the testimony of a VE is used, the VE must identify a

7   specific job or jobs in the national economy having requirements that the claimant's physical and

8   mental abilities and vocational qualifications would satisfy.   20 C.F.R. § 404.1566(b); see

9   Burkhart v. Bowen, 856 F.2d 1335, 1340 n. 3 (9th Cir. 1988).

10        SSR 00-4p provides that where there is an apparent unresolved conflict between VE

11  evidence and the DOT, the ALJ is required to reconcile the inconsistency; that is, the ALJ must

12  elicit a reasonable explanation for the conflict before relying on the VE to support a determination

13  or decision about whether the claimant is disabled.  SSR 00-4p, at *2; see also Johnson, 60 F.3d

14  at 1435 (holding that, if the ALJ relies on a VE's testimony that contradicts the DOT, the record

15  must contain "persuasive evidence to support the deviation.").   "An example of a conflict

16  between the DOT and a VE's testimony is when the DOT's description of a job includes activities

17  a claimant is precluded from doing, and the VE nonetheless testifies that the claimant would be

18  able to perform that job."  Martinez v. Colvin, No. 1:14-cv-1070-SMS, 2015 WL 5231973, at *4

19  (E.D. Cal. Sept. 8, 2015) (citations omitted); see also Zavalin, 778 F.3d at 846 (providing

20  example of apparent conflict as "expert testimony that a claimant can perform an occupation

21  involving DOT requirements that appear more than the claimant can handle").  The ALJ must

22  inquire, on the record at the disability hearing, as to whether or not there is such consistency.

23  SSR 00-4p, at *2; Massachi v. Astrue, 486 F.3d 1149, 1153–54 (9th Cir. 2007).  Further, the

24  Social Security Administration ("SSA") notes neither the DOT nor the VE's evidence

25  "automatically 'trumps' when there is a conflict"; rather, the ALJ must resolve the conflict by

26  determining if the explanation given by the VE is reasonable and provides a basis for relying on

27  the VE's testimony rather than the DOT information.  SSR 00-4p, at *2.

28        Where the ALJ fails to resolve an apparent inconsistency, the court is left with "a gap in

the record that precludes [it] from determining whether the ALJ's decision is supported by substantial evidence."   Zavalin, 778 F.3d at 846; Massachi, 486 F.3d at 1154 ("we cannot determine whether the ALJ properly relied on [the VE's] testimony" due to unresolved occupational evidence).   Nevertheless, a failure to ask the VE whether her testimony conflicts with the DOT may amount to harmless error if there is no conflict, or if the VE provides "sufficient support for her conclusion so as to justify any potential conflicts."   Massachi, 486 F.3d at 1154, n.19; see also Hann v. Colvin, No. 12-cv-06234, 2014 WL 1382063, at *15 (N.D. Cal. Mar. 28, 2014).

2.     Analysis

Plaintiff argues an apparent conflict exists between the DOT and VE's testimony because Plaintiff's need for "job functions to be taught by demonstration, as opposed to having to independently learn [them] through reading manuals," is inconsistent with the VE's testimony that Plaintiff could perform jobs with an SVP level of 2, which Plaintiff proffers requires a higher capacity to understand instructions/training than she is capable of.  (ECF No. 13 at 19–21.)

a.     The Conflict is not "Apparent" or "Obvious"

As relevant here, the RFC included the restrictions that Plaintiff be limited to simple and routine tasks, and she would need a job that has little-to-no independent decision-making in terms of how the job tasks are performed, no required goal-setting, and she can only do jobs where the job functions are taught by demonstration, as opposed to having to independently learn the job tasks through reading manuals.  (AR 25.)  The limitations identified in the RFC in the ALJ's decision are identical to those that the ALJ provided in the hypothetical to the VE during the administrative hearing (compare AR 25 with AR 52–53), which resulted in the VE's testimony that Plaintiff could perform jobs such as laundry worker, hand packager, and garment sorter (AR 53).

Plaintiff asserts the definition of jobs with an SVP 2 rating requires "anything beyond short demonstration up to and including one month to learn" and "the ability to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized solutions."  (ECF

No. 16 at 5 (citing DOT 920.587-018, 361.684-014, 222.687-014; App'x C, "Components of the Definition Trailer" (4th ed. 1991)).)  Plaintiff argues this definition suggests job tasks are too complex to be learned by demonstration and therefore conflicts with the RFC limitation to "job functions … taught by demonstration."   However, the conflict Plaintiff identifies is not "apparent" because the DOT does not indicate that job tasks requiring up to one month to learn or "anything beyond 'short demonstration' " is exclusive of tasks that may be learned through demonstration.  In general, SSR 00-4p explains that:

> [u]sing the skill level definitions in 20 CFR 404.1568 and 416.968, **unskilled work corresponds to an SVP of 1–2**; semi-skilled work corresponds to an SVP of 3–4; and skilled work corresponds to an SVP of 5–9 in the DOT."

SSR 00-4p (emphasis added).   "Simple and routine tasks," as indicated in Plaintiff's RFC, correlates to "unskilled work."   Thus, the DOT appears to indicate that jobs with an SVP of 1 or 2 would be appropriate for the type of work Plaintiff is limited to under the RFC.  The "conflict" Plaintiff identifies, therefore, is not "apparent or obvious."  See Gutierrez v. Colvin, 844 F.3d 804, 807–08 (9th Cir. 2016).  Under such circumstances, the Ninth Circuit has indicated there is no conflict for the ALJ to resolve:

> A conflict must exist between the VE's testimony and the DOT in order to trigger the ALJ's responsibility to resolve the conflict. Here, the DOT is silent on whether the jobs in question allow for a sit/stand option … There is no conflict.

Dewey v. Colvin, 650 Fed. App'x 512, 514 (9th Cir. 2016).

### b.   The ALJ Resolved Any "Conflict"

In addition, the Court notes the VE had reviewed Plaintiff's record, heard her testimony, and was aware of the specific limitations in the RFC when he testified that a hypothetical person with Plaintiff's RFC could perform the identified jobs.  The ALJ asked the VE if his testimony on the hypothetical was consistent with the DOT; the VE testified that it was.   (AR 52–53.) Furthermore, the ALJ also asked the VE if there was any aspect of the hypothetical not covered by the DOT.  (Id.)  The VE expressly testified that certain aspects, "such as goal setting, teaching through demonstration versus reading and exposure to the public [are] not addressed in the

1   Dictionary of Occupational Titles, so [he] had to supplement that information with [his] own

2   professional experience and education."  (Id.)  The hearing transcript thus indicates that, even if

3   there was a conflict, the ALJ resolved any apparent conflict at the hearing.  Moreover, on this

4   record, the Court must conclude the ALJ reasonably relied upon the VE's expertise and

5   testimony.  See Massachi, 486 F.3d at 1152.

6           **c.      Waiver of Challenge**

7           As an alternative note, the Court finds that any error would also be harmless in light of

8   Plaintiff's waiver.

9           "[W]hen claimants are represented by counsel, they must raise all issues and evidence at

10  their administrative hearings in order to preserve them on appeal," otherwise, the issue will be

11  deemed waived.   Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (rejecting brand new

12  challenge to VE testimony as waived because, in proffering statistical evidence for the first time

13  on appeal, the claimant deprived the Commissioner of an opportunity to evaluate that evidence,

14  which the "ALJ, rather than this Court, was in the optimal position" to do, thus prejudicing the

15  Commissioner).  Importantly, Plaintiff's attorney had an opportunity to cross-examine the VE at

16  the hearing, and did not challenge the VE's credentials or his findings.  (See AR 55.)  Nor did

17  Plaintiff's attorney ask any questions about the VE's testimony with respect to the RFC

18  limitations identified by the ALJ.  (See id.)  Thus, Plaintiff did not challenge the VE's testimony

19  with respect to any apparent conflict with the DOT as to the RFC limitations.  As such, the

20  objection is deemed waived.  Meanel, 172 F.3d at 1115.

21          In sum, the Court finds the ALJ reasonably relied on the VE's testimony at step five to

22  find Plaintiff could perform other work.  The Commissioner's decision must be affirmed.

23                                  **VI.**

24                          **CONCLUSION AND ORDER**

25          For the foregoing reasons, IT IS HEREBY ORDERED that:

26          1.      Plaintiff's motion for summary judgment appealing the decision of the

27                  Commissioner of Social Security (ECF No. 13) is DENIED;

28          2.      Defendant's cross-motion for summary judgment (ECF No. 15) is GRANTED;

and

3.      The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Frances J. Garcia and to CLOSE this case.

IT IS SO ORDERED.

Dated:   **September 8, 2023**

_____
UNITED STATES MAGISTRATE JUDGE